# Exhibit 2

**STEVEN J. ROTHANS – State Bar No. 106579**
**YARON F. DUNKEL – State Bar No. 215873**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 South Grand Avenue, 19th Floor**
**Los Angeles, CA 90071**
**(213) 228-0400**
**(213) 228-0401 [Fax]**
**srothans@crdlaw.com | ydunkel@crdlaw.com**
**www.crdlaw.com**

Attorneys for Defendant, City of Upland, a public entity

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SAUL YONKO, an individual; MARILYN YONKO, an individual; and WALTER TRACY, an individual,

Plaintiffs,

vs.

CITY OF UPLAND, a municipal entity, and DOES 1 through 10, inclusive,

Defendants.

Case No.: 5:18-cv-02259-SVW-SP

**DECLARATION OF DETCTIVE RANDALL LAYNE IN SUPPORT OF THE CITY OF UPLAND'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFFS**

DATE: September 27, 2021
TIME: 1:30 p.m.
COURTROOM: "10A"

Pre-Trial Conf.: September 27, 2021
Trial Date: October 4, 2021

I, Detective Randall Layne, declare that:

1. I am a Detective working with the City of Upland Police Department. The following facts are stated from my personal knowledge, except those facts stated on information and belief which I believe to be true, and if called as a witness I could and would so competently testify thereto under oath.

2. This declaration is made in connection with the City of Upland Motion for Summary Judgment, or in the alternative, Partial Summary Judgment in

the above-entitled action.

3. On December 5, 2017, I responded to a 911 call from 1777 Old Baldy Way, Upland. At that time, I was in the course and scope of my employment as a police officer employed by the City of Upland. Prior to arrival, I was informed by Dispatch that a woman at the location called 911 and reported that her son was suicidal at the location, and that the incident was a Code 5150. I understood this to be a reference to California Welfare and Institutions Code section 5150. The Incident Details, which contains the notes from the 911 Operator, was visible on my police vehicle's computer screen before I exited the car. The Incident Details indicated at 8:02:38 a.m., which was before I exited the vehicle, that the 911 operator documented hearing a female speaker on the 911 call stating: "trying to do you cut yourself and you think its ok". Filed herewith as Exhibit "4" is a true and correct copy of the relevant portions of the Incident Details for this inciden.

4. I arrived at the location along with Officer Scott Long in separate vehicles, parked and exited my patrol vehicle, and started walking towards the residence. Both Officer Long and I were wearing full uniform driving black and white patrol vehicles for Upland PD.

5. Officer Long parked ahead of me, exited his vehicle and walked ahead of me.

6. Seconds after I exited my vehicle, I saw a man I later identified as Saul Yonko run into the street at a fast pace towards me and Officer Long.

7. A woman came out running adjacent to Saul Yonko.

8. As Saul was running, he brandished the knife with his arm out-stretched.

9. I yelled at Saul Yonko to "Drop the knife", but Saul continued to run.

/ / /

10. Officer Long yelled at Saul Yonko "Drop it right now. Drop it right now."

11. Saul Yonko did not comply with our orders and continued to run towards.

12. As the woman blocked Saul Yonko's path towards us, Saul made a sudden maneuver and appeared to run away from the woman's path. I believed that he was running to lunge the knife at me.

13. I again ordered Saul Yonko I again yelled "Drop it. Drop it right now."

14. Officer Long again ordered "Drop it right now".

15. Saul Yonko did not stop, and did not drop the knife.

16. In light of the speed Saul Yonko had been running, his failure to drop the knife, his proximity to me and Officer Long, his maneuvering around his mother, I believed that Saul Yonko was attempting to get around his mother and would be able to lunge the knife at me or at Officer Long within a second or two. Therefore, I believed that Saul Yonko posed a significant threat of death or serious bodily (physical) injury to me and Officer Long. Therefore, I fired one round from my firearm, which struck Saul Yonko in the leg.

17. The events, from the moment I first saw Saul Yonko until I fired the round lasted approximately 9 seconds.

18. After I fired the one round Saul Yonko fell to the ground.

19. I continued to order Saul Yonko to drop the knife.

20. Saul Yonko got to a seated and then a leaning position on the street.

21. Approximately 20 seconds after Saul was shot, Saul suddenly moved upwards in my direction in an aggressive manner.

22. Officer Long then deployed his Taser which struck Saul.

23. We then ordered Saul Yonko to roll onto his stomach, and I handcuffed Saul Yonko.

24. At the time of the incident at issue in this litigation, I was wearing a body camera issued by the police department as part of my uniform. Prior to exiting the vehicle, I turned on the camera and filmed the events of the incident. I reviewed the video in preparation of this declaration. Filed herewith as Exhibit "5" is a true and correct copy of my body camera video from this incident, which is File AXON_Flex_Video_2017-12-05_0811-file 2.

25. At the time of the incident at issue in this litigation, Officer Scott Long was also wearing a body camera issued by the police department as part of his uniform. His body camera also filmed the events of the incident. I reviewed the video in preparation of this declaration. Filed herewith as Exhibit "6" is a true and correct copy of Officer Long's camera video from the incident, which is File AXON_Flex_Video_2017-12-05_0811.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 27th day of August, 2021, at Upland, California.

DET. RANDALL LAYNE — Declarant