STEVEN J. ROTHANS – State Bar No. 106579
YARON F. DUNKEL – State Bar No. 215873
CARPENTER, ROTHANS & DUMONT LLP
500 South Grand Avenue, 19th Floor
Los Angeles, CA 90071
(213) 228-0400
(213) 228-0401 [Fax]
srothans@crdlaw.com | ydunkel@crdlaw.com
www.crdlaw.com

Attorneys for Defendant, City of Upland, a public entity

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL YONKO, an individual; MARILYN YONKO, an individual; and WALTER TRACY, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF UPLAND, a municipal entity, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 5:18-cv-02259-SVW-SP <br><br> **CITY OF UPLAND'S REPLY IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** <br><br> DATE: September 27, 2021 <br> TIME: 1:30 p.m. <br> COURTROOM: "10A" <br><br> Pre-Trial Conf.: September 27, 2021 <br> Trial Date: October 4, 2021 |

COMES NOW Defendant, City of Upland, a public entity ("City"), and hereby states that the City met its burden of proof and the City's Motion for Summary Judgment or Partial Summary Judgment should be granted in every respect.

## I. PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS DOES NOT CREATE A DISPUTE OF MATERIAL FACTS

As this Court is aware, Plaintiffs did not file an opposition brief to the City's motion for summary judgment. Plaintiffs' opposition was due on

September 7, 2021, 21 days before the hearing. Central Dist. CA Rule 7-9. Instead, on September 8, 2021, Plaintiffs merely filed a separate statement of facts. From the safety of their counsel's office, Plaintiffs attempted to reconstruct and second-guess Officer Randall Layne's reasonable belief that Saul Yonko posed a significant threat of death or serious physical injury to the officers.

However, on summary judgment, the Court's "inquiry is not 'whether another reasonable or more reasonable interpretation of events can be constructed ... after the fact.' Rather, the issue [for the Court to consider] is whether a reasonable officer could have believed that his conduct was justified." Reynolds v. County of San Diego, 84 F.3d 1162, 1170 (9th Cir.1996) Thus, the Court considers "the perspective of an officer on the scene without the benefit of 20/20 hindsight and consider that 'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" Gonzalez v. City of Anaheim, 747 F.3d 789, 794 (9th Cir. 2014.) Here, Plaintiffs' separate statement engages in a partial play-by-play analysis of Mr. Yonko's foot and whether at a *single* moment the knife in his hand wasn't pointed at the officer, but the law requires that the evidence be examined under the "the totality of the circumstances". Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994.) In evaluating the facts, the "immediacy of the threat posed by the suspect is the most important factor." Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir.2011). Summary judgment was granted in cases when the suspect was seven to eight ( 7 – 8 ) feet away from the officers (Lal v. California, 746 F.3d 1112, 1117 (9th Cir. 2014)), six (6) feet away from a victim (Kisela v. Hughes, 138 S.Ct. 1148, 1154 (U.S.,2018)), or "a few feet away" (City and County of San Francisco, Calif. v. Sheehan, 135 S.Ct. 1765, 1771 (U.S.,2015).) These are very similar facts to the present lawsuit.

These authorities show that Plaintiffs cannot create a genuine dispute of

material facts by arguing (with the luxury of a pause button of an office) alternative possibility for the events or minimizing Saul Yonko's behavior with his knife. "The law does not require an officer who immediately faces physical harm to wait before defending himself until the indication of impending harm ripens into the onslaught of actual physical injury." Gonzalez, supra, 747 F.3d at 800. Thus, relevant to the present case, the court will look at whether the suspect "brandish[ed a knife] at anyone", and the analysis does not require the "officers to delay their fire until a suspect turns his weapon on them. If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." George v. Morris, 736 F.3d 829, 838 (9th Cir., 2013). "[W]here a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force." Smith v. City of Hemet, 394 F.3d 689, 704 (9th Cir. 2005.) In fact, the "Officers need not be absolutely sure… of the nature of the threat or the suspect's intent to cause them harm—the Constitution does not require that certitude precede the act of self protection." Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996.) Here, Saul Yonko was certainly close to reaching and striking at Officer Layne, as the undisputed video evidence shows how far and how fast Saul ran towards the officers, and the entire incident occurred in approximately 9 seconds. [UMF 20.]

**II. THE CITY MET ITS INITIAL BURDEN OF PROOF THAT OFFICER LAYNE HAD PROBABLE CAUSE TO BELIEVE SAUL YONKO POSED A SIGNIFICANT THREAT OF SERIOUS PHYSICAL INJURY TO THE OFFICERS.**

The City met it is initial of proof that "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994). The City's videos and statement of facts demonstrate that it cannot be

disputed that Officer Randall Layne, making a split second judgment, had a reasonable belief that Saul Yonko (who had already cut himself) posed a significant threat of death or serious physical injury to the officers. Saul Yonko is clearly seen running at a fast pace in the direction the officers brandishing a knife [Facts 6-9], he ignored no less than seven commands to drop the knife [Facts 10-11, 14-16], and when momentarily blocked by his mother he nonetheless made a sudden maneuver with the knife in his hand [Fact 13], and even then ignored commands to drop the knife. [Fact 14-16.] Plaintiffs' attorney, from the safety of his computer, disputed whether Saul Yonko was sufficiently "a few feet from Officer Layne" [Fact 17], but this Court can easily see that he was only a few feet away, and Officer Layne declared that he feared that Saul would have been able to lunge his knife at the officer within a second or two and, therefore, posed a significant threat of death or serious bodily injury to Officer Layne and Officer Long. [Fact 18.] In Lal, summary judgment was granted in favor of the defendant where the suspect was seven to eight feet away from the officers. Lal, supra, 746 F.3d at 1117. "By the time that [suspect] Lal, contrary to the officer's commands, advanced to within seven or eight feet of the officers, thereby creating a reasonable fear of imminent serious physical harm, spraying Lal with pepper spray would not have stopped Lal from hurling the rock at the officers." Ibid

Plaintiffs argue in their Separate Statement that the officers should have handled Saul Yonko's assault differently, but the 9th Circuit rejected such argument. Lal, supra, 746 F.3d at 1117. "The fact that [suspect] Lal was intent on 'suicide by cop' did not mean that the officers had to endanger their own lives by allowing Lal to continue in his dangerous course of conduct." Ibid. The authorities are clear that the Officer did not need to be certain, nor wait until plaintiff was within an arm's length, to discharge his gun. Gonzalez, supra, 747 F.3d at 800; Elliott, supra, 99 F.3d at 644. Officer Layne would have been

overly-brave to wait for Saul Yonko (who had already cut himself) to get any closer with his knife.

Plaintiffs also make the absurd contention that Saul dropped the knife before Officer Layne discharged the gun, but not only is there no evidence that Saul Yonko dropped the knife first, Saul is seen still running with the knife and Officer Layne discharged the knife at 0:00:43 second of Officer Long's video. It cannot be disputed that Officer Layne was "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation." Gonzalez, supra, 747 F.3d at 794.

Plaintiffs did not cite a single case in which summary judgment was denied. In contrast, in Elifritz, summary judgment was **granted** where officers shot a man who ignored commands to drop the knife, although there were "barriers in the form of furniture, walls and pillars" between the suspect and the officers. Elifritz v. Fender, 460 F.Supp.3d 1088, 1098 (D.Or., 2020.) A "threatening behavior while he held the knife created a sufficient threat for the officers to respond with deadly force." Ibid, 460 F.Supp.3d at 1106. In the present case, the facts were even more urgent than in Elifritz . There were no barriers between Saul Yonko and Officer Layne – even when Saul's mother momentarily blocked Saul's path to the officer, Saul made a sudden maneuver in the direction of Officer Layne (certainly Saul didn't turn in the opposite direction away from the officers). Moreover, the entire series of events in which Saul ran towards the officers lasted approximately 9 seconds, from the moment Saul is seen running until he was shot. [Fact 20.] Finally, even after having been shot, Saul can be seen attempting to suddenly move forward towards Officer Layne in an aggressive manner, only reinforcing his intent to harm the officer. [Fact 25.] The totality of the evidence demonstrates that, from the perspective of an officer on the scene (and without engaging in 20/20 hindsight), a reasonable officer had

"probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Scott, supra,, 39 F.3d at 914.

### III. WHETHER OFFICE LAYNE HAD ALTERNATIVE OPTIONS AVAILABLE IS IRRELEVANT.

As stated in the moving papers, whether Officer Layne had alternative options available to him, such as use of a taser, is irrelevant. "Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." Forrester v. City of San Diego, 25 F.3d 804, 807–08 (9th Cir. 1994.) [T]he inquiry is whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene. [Citation.] Ibid.

"A reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable." Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010) "In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the least intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). Therefore, the Court cannot indulge in *ex post* inquiry on whether a taser should have been used. Krause v. County of Mohave, 2020 WL 2541728, at *8 (D.Ariz., 2020)

> "Regardless of whether employing less-intrusive methods (like a TASER, pepper spray or physical disarmament) or other de-escalation tactics was even appropriate,

> Plaintiff's suggested analysis requires the Court to indulge in an ex post inquiry that directly contravenes the principles guiding the objective reasonableness inquiry. Requiring the deputies, with the benefit of hindsight, to have chosen a less intrusive alternative would 'require them to exercise superhuman judgment.' That is something this Court will not (and cannot) require."

Ibid., citing to Henrich, supra, 39 F.3d at 915.

In this case, Plaintiffs did not file an opposition brief, nor cite a single authority in which the Court denied summary judgment, much less authority in which the Court second guessed the officer's judgment, or required use of taser. The video shows that Saul Yonko ran with knife towards the officers, ignored multiple commands to drop the knife, came within only a few feet from the officers, and maneuvered in the direction of Officer Layne when his mother briefly blocked Saul's access towards Officer Long. The incident here occurred within 9 seconds [Fact 20]. These fast-evolving facts only highlight why the Court will not expect an officer to use a taser under the facts of this case as it would "require [officers] to exercise superhuman judgment", with the benefit of hindsight. Krause, supra 2020 WL 2541728, at *8. The cases are clear that the Courts will not impose such an obligation on the Officers. Ibid.; Henrich, supra, 39 F.3d at 915.

### IV. PLAINTIFFS' OBJECTION THAT THEY DID NOT NEED TO OPPOSE THE CITY'S MOTION BECAUSE PLAINTIFFS FILED A MOTION TO NAME OFFICER LAYNE AS A DEFENDANT IS IRRELEVANT TO THE MOTION FOR SUMMARY JUDGMENT.

Plaintiffs also served on September 9, 2021 a frivolous objection arguing, without authority, that they do not need to file an opposition brief because they are seeking to amend the complaint to add a defendant. Plaintiffs' motion to

amend to add a defendant is not directed at the City, does not raise new theories of liability against the City, and is irrelevant to the City's motion for summary judgment. Trial date is set for October 4, 2021, and the City filed its motion for summary judgment to be heard before the Final Status Conference.

Moreover, the City is optimistic that the Court will deny Plaintiffs' frivolous motion to amend because it is futile. Officer Randall Layne has no liability to Plaintiffs because he is covered by the qualified immunity. Lal, supra, 746 F.3d at 1116. The "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." City of Escondido, Cal. v. Emmons, 139 S.Ct. 500, 503 (U.S. 2019). Thus, unless the officer violated a right that was established by legal precedent under the facts of the case, the officer is immune from liability. Ibid. "Under our cases, the clearly established right must be defined with specificity. '[The U.S. Supreme Court] has repeatedly told courts ... not to define clearly established law at a high level of generality.' (internal quotation marks omitted). That is particularly important in excessive force cases". Ibid. "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Ibid. In other words, unless Plaintiffs can identify a case with the same specific facts as the present case where an officer was not permitted to use deadly force under these circumstances, the officer is entitled to immunity. Ibid

Here, Plaintiffs in their separate statement relevant to this motion for summary judgment, and in their motion to amend briefs, have not identified a single legal authority that established any precedent that Officer Layne had violated. Without such precedent, Officer Layne is immune from liability to Plaintiffs. Plaintiffs' motion to amend is a delay tactic, as is their objections to having to oppose the City's motion for summary judgment.

## V. CONCLUSION

The City respectfully requests that summary judgment should be granted in favor of the City, that the motion to amend to name Officer Layne as a defendant should be denied, and the case should conclude.

DATED: September 13, 2021     CARPENTER, ROTHANS & DUMONT LLP

By:    /s/ *Yaron F. Dunkel*
Steven J. Rothans
Yaron F. Dunkel
Attorneys for Defendant,
City of Upland, a public entity